# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANA J. MOREAU, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-08-048-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

The claimant Dana J. Moreau requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision is supported by substantial evidence; and second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias* 933 F.2d at 800-801.

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to a listed impairment), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show she does not retain the residual functional capacity (RFC) to perform her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work she can perform existing in significant numbers in the national economy, taking into account the claimant's age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

## Claimant's Background

The claimant was born on March 13, 1965, and was forty-two years old at the time of the most recent administrative hearing. She has a GED plus vocational training and previously worked as a customer service clerk. She alleges she has been unable to work since June 1, 2003, because of shortness of breath; hepatitis C; liver disease; anemia; problems with her hands, back, knees, heart, thyroid, hearing and legs; depression, anxiety; post traumatic stress disorder ("PTSD"); history of substance abuse; and attention deficit disorder ("ADD").

## Procedural History

On July 2, 2003, the claimant filed an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, which was denied. ALJ Gene Kelly initially issued a decision on January 24, 2006, finding the claimant not disabled. The claimant sought review from the Appeals Council which remanded the case to the ALJ for further findings. ALJ Kelly conducted a supplemental hearing and again determined the claimant was not disabled on August 13, 2007. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that the claimant retained the residual functional capacity ("RFC") to perform sedentary and light work, *i. e.*, that she could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk six hours in an eight-hour workday at thirty-minute intervals;

and sit for six hours in an eight-hour workday at one-hour intervals. The claimant's squatting, kneeling, crouching and crawling was limited, and she could only occasionally climb, bend, stoop, operate foot controls, and reach overhead. Her feeling, fingering and grasping was slightly limited and she was to avoid dust, fumes, gases and temperature extremes and needed a low noise environment. The claimant's mental impairments limited her "to simple, routine and repetitive work activity with limited contact with the public, coworkers, and supervisors." (Tr. 22). The ALJ concluded that although the claimant could not return to her past relevant work, she was not disabled because there was work she could perform existing in significant numbers in the regional and national economies, *e. g.*, bench assembly, electronics assembly, clerical mailer and semi-conductor assembly (Tr. 27).

## Review

The claimant contends that the ALJ erred: (i) by failing to make a proper step-five determination; (ii) by failing to properly analyze the opinions of the treating and examining physicians; (iii) by failing to properly analyze her credibility; and, (iv) by failing to follow the directives of the Appeals Council on remand. As part of her second argument, the claimant contends that the ALJ failed to properly consider the opinions of her treating psychiatrist Dr. Steven Delia, M.D. The Court finds this argument persuasive.

The record reveals that the claimant began receiving treatment for her mental impairments at the Bill Willis Community Mental Health and Substance Abuse Center in January 2004. She primarily complained of depression over many years and reported past suicide attempts (Tr. 189-94). When she was examined in late January 2004, the claimant was assessed with major depressive disorder (recurrent, moderate), PTSD, physical problems

including Hepatitis C and asthma, and a current Global Assessment of Functioning ("GAF") score of 55 with 65 being the highest score in the past year. The claimant was noted to have significant problems with motivation, energy and mood (Tr. 184-87). She attended group therapy (Tr. 178-82), but her treating physician Dr. Delia indicated that she remained depressed in March 2004 due in part to the death of her father (Tr. 183). In May 2004, the claimant's counselor questioned whether the claimant's depression and PTSD met the criteria for her to continue treatment at the mental health center since she was receiving treatment from another agency (Tr. 173-74); however, the claimant continued to see Dr. Delia in June and July 2004 (Tr. 171-72). In June 2004, Dr. Delia completed a mental status form wherein he noted the claimant's mood was depressed, she exhibited a reduced ability to think, reason and respond, she had a reduced interest in daily activities, and should avoid job stress. Dr. Delia responded with a "no" when asked whether the claimant could "remember, comprehend and carry out (simple) (complex) instructions on an independent basis [and] respond appropriately to work pressure, supervision and coworkers[.]" He assessed the claimant with major depression (recurrent, severe), PTSD, and anxiety (Tr. 169-70). He also completed a mental RFC assessment and concluded the claimant had marked limitations, *i.e.*, restrictions seriously affecting the ability to function, in the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaption (Tr. 167-68).

The claimant continued to receive counseling (Tr. 273-75, 277, 279, 282-85, 287-90) and was seen again by Dr. Delia in September 2004. She reported being stable on her medication but was having problems with anxiety in public (Tr. 286). At her December 2004

appointment, the claimant reported she was out of medication and her depression and anxiety had increased. She also indicated that she felt her dead father's "spirit" and he was trying to contact her (Tr. 281). In January 2005, the claimant told Dr. Delia her depression had increased and she was sleeping less. He assessed the claimant with major depressive disorder (recurrent, severe), anxiety and PTSD and recommended she return in four weeks (Tr. 280). By February 2005, the claimant again was stable on her medications although she described her depression as the same (Tr. 278). The claimant reported an increase in stressors, depression and anxiety in April 2005 (Tr. 276). In May 2005, the claimant's counselor reported meeting with the claimant, discussing her mental RFC and completing the form. She noted that an appointment would need to be made with Dr. Delia so he could sign the form (Tr. 273). The mental status form indicated that the claimant suffered from increased depression and anxiety, anxiety attacks, sleep problems, and difficulty being around other people. She was to avoid work stress and her ability to think, reason and respond was reduced. Her prognosis was rated as guarded and she was unable to remember, comprehend and carry out simple instructions on an independent basis or respond appropriately to work pressure, supervision and co-workers. The claimant was assessed with major depression disorder (recurrent, severe with psychotic features), anxiety disorder NOS, and PTSD (Tr. 221-22). The mental RFC assessment showed that the claimant suffered from several moderate and marked limitations in functioning. The claimant was markedly limited in her ability: to remember locations and work-like procedures; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to work in coordination with or in

proximity to others without being distracted by them; to complete a normal workday and work week without interruptions from psychologically based symptoms; to interact appropriately with the general public; to ask simple questions or request assistance; to accept instructions and respond appropriately to criticism from supervisors; and to get along with coworkers and peers without distracting them or exhibiting behavior extremes (Tr. 223-24). The claimant returned to see Dr. Delia in June 2005 and continued to receive treatment from him on at least five more occasions through April 2006 (Tr. 243-44, 249, 251, 268, 270, 272). She also continued to receive counseling during this time (Tr. 242, 246, 247, 252-55, 269, 271).

The ALJ discussed Dr. Delia's opinions (as set forth in his mental RFC assessments from June 2004 and May 2005) and determined they were entitled to "little weight" because: (i) Dr. Delia did not see the claimant on a monthly basis; (ii) progress notes from the Bill Willis Clinic from May 2004 suggested "the claimant would possibly be discharged from treatment . . . as her depression and post traumatic stress disorder did not meet the criteria for continued treatment[;]" and, (iii) Dr. Delia did not complete the mental RFC assessment but it was instead completed by the claimant and her counselor (Tr. 26). This analysis of Dr. Delia's opinions was deficient for several reasons.

First, the ALJ's statements that Dr. Delia did not see the claimant on a monthly basis and that she would possibly be discharged from treatment are not legitimate reasons for rejecting his opinions. *See*, *e. g.*, *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) ("[I]f the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so."), *citing Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996). With regard to

the treating relationship, Dr. Delia may not have seen the claimant on a monthly basis, but he did see her on over a dozen occasions between March 2004 and April 2006. This would seem to be enough to establish a treating relationship with her. *See*, *e. g.*, *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003) (noting that in order for a treating relationship to exist, the physician must have "seen the claimant 'a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment[.]'"), *quoting* 20 C.F.R § 416.927(d)(2)(i), (ii). Further, the May 2004 progress notes from the Bill Willis Clinic *do* indicate that the claimant's counselor questioned whether the claimant's depression and PTSD met the criteria for her to continue treatment (Tr. 173-74). But the notation was of little consequence because the claimant *was not* discharged and continued to receive counseling and treatment from Dr. Delia until April 2006.

Second, although the record suggests that the claimant and her counselor discussed the 2005 mental RFC assessment and participated in its completion, there is nothing to indicate that Dr. Delia did not agree with these findings, especially since his signature appears on the form. The ALJ should not have rejected his opinions on this basis without first recontacting him for an explanation. *See*, *e. g.*, *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("[T]he ALJ's unfounded doubt that Dr. Luc agreed with the assessment he signed, in the face of unrefuted evidence to the contrary, was error. At the least, if the ALJ believed that the matter was open to question, he had an obligation under the applicable regulations to obtain additional information from Dr. Luc before rejecting the report outright."). *See also* 20 C.F.R. § 416.912(e)(1) ("We will seek additional evidence or

clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved[.]").

Finally, the ALJ did not perform an appropriate analysis of Dr. Delia's opinion under the treating physician rule. He was required to determine whether Dr. Delia's opinions were entitled to controlling weight, *i. e.*, if the opinions were "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record[,]'" *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins*, 350 F.3d at 1300, and even if they were not entitled to controlling weight, the ALJ was to determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] [416.927].'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). With the possible exception of the first factor, the ALJ failed to specifically address any of the others.

Accordingly, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis of Dr. Delia's opinions. If the ALJ subsequently determines that additional limitations should be included in the claimant's RFC, he should then redetermine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED** this 18th day of March, 2009.

_____

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**